425 So.2d 594 (1982)
DANIA JAI-ALAI PALACE, INC., Carrousel Concessions, Inc., and Saturday Corporation, Appellants,
v.
Gladys SYKES, Appellee.
No. 80-535.
District Court of Appeal of Florida, Fourth District.
December 29, 1982.
Rehearing Denied February 9, 1983.
*595 Wm. R. Dawes, Guy B. Bailey, Jr., and Sara Soto of Bailey & Dawes, Miami, for appellants.
Gilbert A. Haddad of Haddad & Josephs, Miami, for appellee.
*596 HURLEY, Judge.
This appeal follows a plaintiff's verdict in a personal injury action. The principal question presented is whether a parent corporation may be held liable for torts committed by an employee of a wholly-owned subsidiary corporation. We answer in the affirmative since the record in this case contains substantial competent evidence to support findings that the subsidiary was a mere instrumentality of the parent and that the employee was acting within the course and scope of his employment. Therefore, for this and other reasons enumerated herein, we affirm in part and reverse in part.
On December 15, 1977, Gladys Sykes attempted to patronize the Dania Jai-Alai fronton. She arrived in her car and was directed into the valet parking area by a security guard employed by Dania Jai-Alai Palace, Inc. She purchased a parking ticket and turned the car over to the ticket seller who was employed by another corporation, Carrousel Concessions, Inc. Then she began to walk forward in front of her car toward the main gate of the fronton.
Ms. Sykes' car was the last in a short line of cars which were temporarily stopped near the fronton entrance waiting to be moved by parking attendants. There was about a four foot space between the Sykes' car and the one ahead. Since parking attendants were about to move the other cars in the line, the ticket seller, who was in overall charge of keeping things moving, got into Ms. Sykes' car and prepared to drive it. He looked at the gear shift indicator and moved it from "park" to "drive." As he did so, he took his foot from the brake pedal and placed it on the accelerator pedal. The car began to move forward and, at this point, he looked up and saw Ms. Sykes in front of the car, near its center. He attempted to brake, but his foot slipped and hit the accelerator. Ms. Sykes was propelled forward and crushed into the stationary car ahead; she was seriously injured.
Initially, Ms. Sykes sued Dania Jai-Alai Palace, Inc. (Dania). Later, when her attorneys discovered that Carrousel Concessions, Inc. (Carrousel) was running the valet parking, she amended her complaint to include Carrousel and to include Saturday Corporation (Saturday), the parent corporation of Dania and Carrousel.
Ms. Sykes sought to hold Carrousel, the driver's employer, liable under the theory of respondeat superior and for independent acts of negligence. She sought to hold Dania liable under three alternate rationales: 1) a premises liability theory; 2) an apparent agency theory, i.e., that the two corporations operated the fronton in such a close knit fashion that the public was led to believe it was a single business entity and, thus, each was the agent of the other; and 3) an "alter ego" or "mere instrumentality" theory, i.e., that the operations of Dania and Carrousel were so intertwined that equitable principles justify piercing their corporate veils. Ms. Sykes also sought to hold Saturday, the parent corporation, liable for the tortious acts of Carrousel's employee on the theory that Carrousel and Dania were the mere instrumentalities of Saturday.
At the conclusion of the evidence, the trial court ruled as follows: (1) It entered a directed verdict on the driver's negligence and, consequently, entered a directed verdict against Carrousel, finding that it was liable for its employee's negligence. (2) It directed a verdict in favor of the plaintiff, Ms. Sykes, finding that she was without comparative fault. (3) Based on the directed verdict entered against Carrousel, the court granted a directed verdict against Dania, finding that the fronton had been operated in such a manner that the public had been led to believe that it was a single entity. (4) At the defendants' behest, and over the plaintiff's objections, the court ruled that the plaintiff's theory of premises liability against Dania would not be submitted to the jury since Dania had been found liable under another theory. (5) Lastly, the trial court ruled that the issue of Saturday's ultimate responsibility and the amount of the plaintiff's damages would be submitted to the jury.
The jury returned a verdict for the plaintiff and against all three corporate defendants in the amount of $775,000.

*597 I

Carrousel's Employee's Negligence
Florida courts employ a rebuttable presumption in rear-end collision cases: the driver of a vehicle which strikes another vehicle in the rear is presumed to be negligent. Brethauer v. Brassell, 347 So.2d 656, 657 (Fla. 4th DCA 1977); Lincoln v. Miggins, 249 So.2d 88, 88-89 (Fla. 3d DCA 1971). If the driver of the second vehicle does not offer a satisfactory explanation as to why he collided with the car in front, then he is subject to having a verdict directed against him on the issue of liability. Id.
Here, the defendants failed to rebut the presumption of negligence. The driver testified that he got into Ms. Sykes' car after she had paid him. The car was at the end of a line of cars which were about to be moved by parking attendants and there was about four feet between the Sykes' car and the one ahead. The driver knew that customers frequently walked in front of their cars to get to the fronton. Indeed, customers had to cross the line of cars, either by walking in front of or behind their cars, to enter the fronton.
When the driver entered Ms. Sykes' car the motor was running with the automatic transmission in the "park" position. The driver shifted from "park" to "drive," and, without looking forward, moved his foot from the brake to the accelerator. Only then did he look forward and discover Ms. Sykes in front of the car. Although he tried to apply the brakes, he hit the accelerator and caused Ms. Sykes to be propelled forward and crushed between the cars.
The driver's explanation does not rebut the presumption of negligence. He admits that he set the car in motion without first checking the path ahead even though he had reason to believe that the path might be obstructed by pedestrian traffic and other cars. Thus, the driver negligently created a risk. That he subsequently made an unsuccessful effort to avoid the risk does not excuse his initial negligence. Accordingly, the trial court was correct in directing a verdict on the issue of the driver's negligence and his employer's liability.

II

Negligence of Ms. Sykes
Next, we consider the propriety of the trial court's action of granting a directed verdict on the issue of Ms. Sykes' negligence. The applicable standard requires that we view the evidence and all reasonable inferences therefrom in the light most favorable to the appellants, the non-moving parties. See Burmeister v. American Motorists Insurance Co., 403 So.2d 541, 542 (Fla. 4th DCA 1981). Applying this standard to the case at bar, we find that the evidence will support a reasonable inference that Ms. Sykes walked between two cars which were about to be moved without looking to see if the driver of her car was aware of her presence and was willing to allow her to pass. If this were the jury's finding, it would constitute some negligence on the part of Ms. Sykes. Thus, we hold that the evidence was sufficient to withstand a motion for directed verdict and that the court erred in not allowing the jury to pass upon this issue.

III

Liability of Dania
After both sides rested, the trial court ruled that Dania was liable for the negligence of Carrousel's parking attendant. The court reasoned that this "is a special factual situation ... where someone is injured in the confines of the whole operation." Thus, the court concluded that Dania was liable because of the close knit nature of the operation in which both corporations combined forces to engage in a single business and held themselves out to the public as a single enterprise. We agree.
The uncontroverted evidence shows that Dania owns the entire premises. The operational aspect of business, however, has been divided between Dania and its sister corporation, Carrousel, which Dania financed. Dania handles the betting, the players, and the admission. Dania also handles maintenance and the hiring of security *598 personnel. Carrousel, on the other hand, handles food, beverages, program sales, and parking. Notwithstanding this division of labor, the two corporations present a public image of a single enterprise. They advertise themselves simply as Dania Jai-Alai and the public has no reason to suspect that there is more than one entity involved.
When two corporations engage in a common enterprise that involves an inherent risk to members of the public, and hold themselves out to the public as a single enterprise, then both corporations will incur tort liability for the torts of the enterprise. Stuyvesant Corp. v. Stahl, 62 So.2d 18 (Fla. 1953); see Orlando Executive Park, Inc. v. P.D.R., 402 So.2d 442 (Fla. 5th DCA 1981). We find that the trial court correctly applied this principle in the case at bar.

IV

Liability of Saturday
Next, we consider the question of Saturday's liability. May a parent corporation be held liable for torts committed by an employee of a wholly-owned subsidiary? In this instance, the answer is "yes." Here, the jury applied the long-established principle of Florida law that, when one corporation controls and dominates another corporation to the extent that the second corporation becomes the "mere instrumentality" of the first, the dominant corporation is liable for the torts of the subservient corporation. Levenstein v. Sapiro, 279 So.2d 858 (Fla. 1973); Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849 (Fla. 1971); Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247 (1941). In light of the jury's affirmative finding, our responsibility is not to re-weigh the evidence, Levenstein v. Sapiro, supra, but only to determine whether the verdict is supported by competent substantial evidence. See Bermil Corp. v. Sawyer, 353 So.2d 579 (Fla. 3d DCA 1977).
At the outset, we reject appellants' contention that, in order to utilize the instrumentality doctrine, the plaintiff had to establish fraud or other wrongdoing on the part of Saturday. Although there are conflicting lines of cases on this point, we took a definitive position in Vantage View, Inc. v. Bali East Development Corp., 421 So.2d 728 (Fla. 4th DCA 1982), and said that we intend to "follow the decision of the supreme court in Barnes,[1]Mayer,[2]Aztec[3] and Levenstein[4] which have held it sufficient to allege domination and control without the necessity of alleging improper purpose or unjust loss."
Whether a subsidiary is a mere instrumentality is normally a question of fact for the jury. Barnes v. Liebig, supra. "The central factual issue is control, i.e., whether the parent corporation dominates the activities of the subsidiary." Japan Petroleum Co. (Nigeria) Ltd. v. Ashland Oil, Inc., 456 F. Supp. 831, 841 (D.Del. 1978). The degree of control necessary to sustain liability under the instrumentality rule has been characterized as "total domination of the subservient corporation, to the extent that the subservient corporation manifests no separate corporate interests of its own and functions solely to achieve the purposes of the dominant corporation." Krivo Industrial Supply Co. v. National Distillers & Chemical Corp., 483 F.2d 1098, 1106 (5th Cir.1973), modified per curiam, 490 F.2d 916 (5th Cir.1974). On the other hand, courts generally agree that the application of the instrumentality rule demands a case-by-case analysis. Because the instrumentality rule is "essentially equitable in character, the conditions under which a corporate entity may be disregarded vary, depending upon the circumstances in each case. [Citations omitted.] It is therefore inappropriate to attempt to apply any verbalization of the test in a mechanical manner." FMC Finance Corp. v. Murphree, 632 F.2d 413, 422 (5th Cir.1980).
*599 A number of courts have suggested that the following factors are relevant in determining the applicability of the instrumentality rule.[5] (1) The parent corporation owns all or majority of the capital stock of the subsidiary. (2) The parent and subsidiary corporations have common directors or officers. (3) The parent corporation finances the subsidiary. (4) The parent corporation subscribes to all the capital stock of the subsidiary or otherwise causes its incorporation. (5) The subsidiary has grossly inadequate capital. (6) The parent corporation pays the salaries or expenses or losses of the subsidiary. (7) The subsidiary has substantially no business except with the parent corporation or no assets except those conveyed to it by the parent corporation. (8) In the papers of the parent corporation, and in the statements of its officers, "the subsidiary" is referred to as such or as a department or division. (9) The directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation. (10) The formal legal requirements of the subsidiary as a separate and independent corporation are not observed.
Turning to the evidence in the case at bar and viewing it in the light most favorable to the plaintiff/appellee, we find that Carrousel was wholly owned by Saturday and that they shared common officers. Furthermore, although there was testimony that the day-to-day operation of Carrousel was placed in the hands of an independent general manager, there was other testimony that the general manager regularly reported to one of the common officers and thereafter implemented his directions. Testimony also indicated that the common officer was present on the premises of the fronton and had the ability to hire and fire employees of Carrousel. The proof further demonstrated that Saturday created Carrousel and initially funded it through Dania, its other subsidiary.
A highly relevant factor in evaluating the application of the instrumentality rule is whether there is proof that the subservient corporation was being used to further the purposes of the dominant corporation to the extent that the subservient corporation in reality had no separate, independent existence of its own. See, e.g., Krivo Industrial Supply Co. v. National Distillers & Chemical Corp., supra. In the case at bar, there was substantial proof that Carrousel existed only to serve the needs of Saturday. For example, Carrousel only operated at two frontons, both of which were owned either directly or indirectly by Saturday. Carrousel maintained its offices within the fronton and gave all outward appearances of being part of an integrated operation. In this respect, it is noteworthy that Saturday and its two subsidiary corporations filed a consolidated federal income tax return and were jointly insured. The evidence suggests that Saturday maintained a pervasive control over all aspects of the fronton's operations and, given such evidence, we cannot say that the jury's finding that Carrousel was the mere instrumentality of Saturday is clearly erroneous. Therefore, we affirm the verdict finding Saturday liable for the acts of Carrousel.

V

Summary
To summarize, we hold that the trial court did not err in directing a verdict on the negligence of the driver. It did err, however, in directing a verdict on the issue of Ms. Sykes' negligence and the comparative fault of the parties. As to the liability of the corporations, we hold that appellants have failed to demonstrate reversible error. *600 Finally, we find that appellants' remaining points on appeal are without merit and, thus, we affirm the verdict as to the amount of damages.
Accordingly, we affirm in part, reverse in part, and remand for further proceedings on the issue of Ms. Sykes' alleged negligence.
DOWNEY, J., and UPCHURCH, JOHN J., IV, Associate Judge, concur.
NOTES
[1] Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247 (1941).
[2] Mayer v. Eastwood, Smith & Co., 122 Fla. 34, 164 So. 684 (1935).
[3] Aztec Motel, Inc. v. State ex rel. Faircloth, 251 So.2d 849 (Fla. 1971).
[4] Levenstein v. Sapiro, 279 So.2d 858 (Fla. 1973).
[5] Fish v. East, 114 F.2d 177 (10th Cir.1940); Baker v. Raymond International, Inc., 656 F.2d 173 (5th Cir.1981), cert. denied, ___ U.S. ___, 102 S.Ct. 2256, 72 L.Ed.2d 861 (1982). The reliance on these factors by the factfinder in a federal bench trial was approved in Bay Sound Transportation Co. v. United States, 474 F.2d 1397 (5th Cir.1973) (per curiam), aff'g 350 F. Supp. 420 (S.D.Tex. 1972), cert. denied, 415 U.S. 916, 94 S.Ct. 1413, 39 L.Ed.2d 471 (1974). These factors were initially set forth in Taylor v. Standard Gas & Electric Co., 96 F.2d 693, 704-05 (10th Cir.1938) (quoting Powell on Parent and Subsidiary Corporations), rev'd on other grounds, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939).