## HOPPER-McALLISTER CORPORATION *v.* PELHAM.

1. MECHANICS' LIENS—NOTICE OF LIEN—MISTAKE IN GIVEN NAME NOT FATAL WHERE NO PREJUDICE CLAIMED.
   Where a husband and wife owned a city lot by the entireties and jointly contracted for the erection of a building thereon, a mistake in the wife's Christian name in the notice of lien thereon, served on the husband, who waived service on the wife, was not fatal to the validity of the lien, in the absence of a claim that she was misled thereby to her prejudice; said mistake not being jurisdictional.

2. SAME—SERVICE OF STATEMENT OF EXPENDITURES.
   Where the contractor prepared a statement showing expenditures to date, in accordance with the requirement of 3 Comp. Laws 1915, § 14799, and, at the owner's request, and in his presence, served it upon the trust company which was furnishing the money, the service was on both, and the owner may not complain that service was not had on him.

[1]Mechanics' Liens, 40 C. J. § 194; 18 R. C. L. 939; [2]Id., 40 C. J. § 199.

3. SAME — FAILURE TO SEGREGATE EXTRAS NOT A VIOLATION OF
    STATUTE.

  Where the owner had possession of all of the bills for
    material and labor that went into the building, failure
    of the contractor to segregate the cost thereof which con-
    stituted the extras from the mass in the statement served
    was not a violation of 3 Comp. Laws 1915, § 14803, which
    does not require segregation of the extras, but does re-
    quire a statement of the entire construction to date.

  Appeal from Wayne; Merriam (De Witt H.), J.
Submitted June 14, 1927. (Docket No. 50.) De-
cided January 3, 1928.

  Bill by the Hopper-McAllister Corporation against
Harold F. Pelham and others to foreclose a mechanic's
lien. From a decree for plaintiff, defendants appeal.
Affirmed.

  *S. Homer Ferguson,* for plaintiff.

  *Miller, Canfield, Paddock & Stone,* for defendants.

  BIRD, J. This suit was filed to foreclose a mechanic's
lien. Defendants owned a lot on Calvert avenue, and
were desirous of erecting thereon a two-family flat.
They employed plaintiff as their contractor. They
exhibited to plaintiff a sketch of the kind of flat they
wanted, and, after examining together some flats which
he had erected, he estimated such a flat as they desired
would cost $17,000. Defendants made a written con-
tract with plaintiff to employ the labor, purchase the
materials, and supervise the job, and agreed to allow
him a fee of $2,100 for his services. The work was
begun in May, 1922, and finished some time in Feb-
ruary, 1923. Many changes and additions were made
to the original plans as the work progressed. When
finished, it was found that the flat had cost nearly
$4,000 more than the estimate. Defendants hesitated

  [3]Mechanics' Liens, 40 C. J. § 199.

about paying this sum, and plaintiff filed a lien on the flat.

1. Defendants complain because a mistake was made in Mrs. Pelham's given name in the lien. Her name was stated in the notice of lien as "Emma," whereas it should have been "Ermina." Mr. and Mrs. Pelham owned this property by the entireties, and jointly contracted to have the improvements made. Service of a copy of the lien was served on Mr. Pelham, and service was waived for her by him. There is no claim that she was misled to her prejudice by the mistake. The mistake was not jurisdictional.

2. The plaintiff contractor was desirous of having a payment on his contract. He prepared a statement in accordance with 3 Comp. Laws 1915, § 14799, showing all expenditures up to December, 1922, and served it upon the Detroit Trust Company, who was furnishing the money on a mortgage as the work progressed. Mr. Pelham was present at the time. He saw the statement and was at liberty to examine it if he chose. He now complains that the statement was not served upon *him*. Plaintiff replies to this that the trust company was furnishing the money for defendant as the work progressed, and, therefore, was the agent of the defendant for the service of the statement, and cites *Acme Lumber Co.* v. *Swanston*, 214 Mich. 561. It also calls attention to the observation made by the defendant Pelham at the time the statement was served, "that Mr. Monroe, who was handling the matter for the trust company, was the man to make his peace with." We think the record fairly shows, however, that the delivery was made to both, Pelham and Monroe. Monroe had possession of it by direction of Pelham, and Pelham had access to it. No particular exception seems to be taken to the sufficiency of the notice except that the cost of the extras was not shown.

3. The defendants appear to have been much disturbed about the excess over the estimate, and wrote to plaintiff the following letter:

"I wonder if Jess has had time to make up the cost list of the extras according to the list which Mr. Hopper had at the time we went over the building costs when the loan was put on the house?

"I wish you would have it made up and sent to me so that I can go over it and see just what you list and costs would appear to be."

Plaintiff's reply to this was:

"That it was next to impossible to give the exact cost of extras on your property. You have the time book and all bills, which will show the entire cost of the building as originally planned and as finally completed. Of course, anything that we can do to enlighten you as to the time book and the bills which you now hold, we shall be glad to do. * * *

"What was added for extras we could not figure exactly at this time."

Defendants claim that a failure to give the cost of the extras was in violation of 3 Comp. Laws 1915, § 14803. It appears in the testimony that the defendants had all the bills for material and labor that went into the house. The difficulty was that plaintiff could not segregate the cost of the material and labor which went into the extras from the mass, at least without possession of the bills, which the defendants had in their own possession. We do not think that a failure to do this was a violation of the statute referred to. There is nothing in the statute which would require the plaintiff to segregate the cost of any particular part of the house. Neither is there anything in the contract which would require it. The duty of the contractor, when called upon, was to prepare and serve a statement of the items mentioned of the entire construction to that date.

Plaintiff raises some question that a settlement was

agreed between it and defendants, but was not carried out by them.   The trial court considered this and said:

"The court finds that a compromise settlement was entered into by the plaintiff and defendants wherein the plaintiff and defendants agreed upon a certain amount to be paid.   The consideration for the payment of this certain amount was the deduction of three hundred ($300) dollars, which amount is deducted from the amount for which a decree may be taken.

"It is apparent from the testimony the reason why this agreement as to the payment of the specific amount less three hundred ($300) dollars was not carried out and said amount paid, the said defendant, Harold F. Pelham, testified that it would have cost ten per cent. (10%) to obtain a second mortgage, together with seven (7%) per cent. interest per annum, whereas the plaintiff would only be entitled to five (5%) per cent. interest per annum."

That the final cost was so much in excess of plaintiff's estimate was cause for much disappointment on the part of defendants, but it was largely brought on by their leaving the cost of the flat an open one, and then making changes and additions without first ascertaining their cost.   While the cost was more than was expected, the work appears to have been well done, and defendants got what they wanted.   We agree with the trial court that foreclosure should be granted for the sum of $3,649.38, with interest and costs.

FELLOWS, WIEST, CLARK, MCDONALD, and SHARPE, JJ., concurred.

The late Justice SNOW and Justice STEERE took no part in this decision.