410 So.2d 542 (1982)
EDWARD J. GERRITS, INC. and United States Fidelity and Guaranty Company, Appellants,
v.
Stanley McKINNEY, Deceased, Isaac Mae McKinney, Wife, Norman Eric Olson, Deceased, Betty Olson, Wife, Ashemimry-Stirr Construction Company, United Commercial Agencies, Ltd., and the Division of Workers' Compensation, Appellees.
ASHEMIMRY-STIRR CONSTRUCTION COMPANY, Cross-Appellant,
v.
Stanley McKINNEY, Deceased, Isaac Mae McKinney, Wife, Norman Eric Olson, Deceased, Betty Olson, Wife, Edward J. Gerrits, Inc., United States Fidelity and Guaranty Company, United Commercial Agencies, Ltd. and the Division of Workers' Compensation, Cross-Appellees.
No. YY-424.
District Court of Appeal of Florida, First District.
February 4, 1982.
Rehearing Denied March 16, 1982.
*543 Summers Warden, Miami, for appellants.
Harold Mendelow of Solomon & Mendelow, Miami Springs, for appellee McKinney.
Jerold Feur, Miami, for appellee Olson.
Richard E. Gerstein and Paul M. Rashkind of Sams, Gerstein & Ward, Miami, for cross-appellant Ashemimry-Stirr Const. Co.
JOANOS, Judge.
This workers' compensation appeal concerns the operation and management of a construction project in Saudi Arabia. The order dealt with the consolidated claims of the dependents of both McKinney and Olson, who were killed simultaneously in an automobile accident on September 25, 1978 while working on the construction of a hospital. In the order, the deputy found that Edward J. Gerrits, Inc. ["G. Inc."], a Florida corporation, was a joint venturer with Ashemimry-Stirr Construction Co. ["A-S Co."], the entity that was primarily responsible for the construction of the Saudi Arabian hospital. (A-S Co. is the sole proprietorship of an Arab nationalist, Nasir Ashemimry, combined with a Caymen Islands corporation known as "Stirr Consulting Company".) Holding that G. Inc.'s workers' compensation policy covered the accident in Saudi Arabia, the deputy concluded that the decedents were employees of the joint venture and that G. Inc. solicited their services, accepted their employment applications, *544 and made arrangements for their travels. Finally, the deputy found the joint venturers (G. Inc. and A-S Co.) jointly and severally liable for dependency benefits for both decedents as well as for attorney's fees. We affirm the portion of the order holding G. Inc. liable for workers' compensation benefits, remand for a redetermination of attorney's fees, and reverse as to the joint and several liability of A-S Co.
The principal issue with regard to G. Inc.'s responsibility for workers' compensation benefits was whether or not G. Inc. could be regarded as an employer of the two men while they were working in Saudi Arabia.[1] We hold that there was competent substantial evidence to support the deputy's order finding G. Inc. and its carrier liable for workers' compensation benefits, although not under the rationale that G. Inc. was a joint adventurer with A-S Co.
The evidence that is supportive of the deputy's decision derives primarily from testimony concerning the business activities of Michael Gerrits, the key figure in this saga. Michael was an officer and shareholder of G. Inc. In addition, he was hired by Nasir Ashemimry to be the managing director of A-S Co., and was the spokesman for Stirr Consulting Co. in its negotiations with Nasir Ashemimry. Michael's involvement with each of these entities made it difficult, if not impossible for an outsider to discern which "hat" Michael was wearing at any particular time. This confusion was intensified by Michael's failure to clearly identify for whom he was negotiating and by his use of the G. Inc. offices to conduct much of his business when he was not in Saudi Arabia.
One of the functions which Michael testified that he performed for A-S Co. was to review employment applications and recommend who was to be hired to work on the Saudi Arabian hospital project. Whether the hiring function was performed on behalf of A-S Co. or on behalf of G. Inc. was in dispute since E.J. Gerrits, the principal officer and shareholder of G. Inc., testified that G. Inc. was hired as a consultant to A-S due to its experience in "buying men" for construction jobs. More importantly, the evidence is uncontradicted that Michael and another officer/shareholder of G. Inc., Maartje Murphy, utilized the offices of G. Inc. to receive employment applications and to make all of the arrangements for travel, shots and visa applications for those persons who were ultimately hired. The G. Inc. premises were also used on occasion as the place where an employee's family members (including Mrs. McKinney), could pick up money earned by the employee while working in Saudi Arabia.[2] Men who had sought employment or who were asked to locate help for the Saudi Arabia job spoke directly with Michael or Maartje, knowing their connection with G. Inc. yet never being informed that G. Inc. was not the primary employer. Although the men who were hired received a memo on A-S Co. stationery stating that "you are employed by a corporation registered in Saudi Arabia," they were never directly informed who their employer was or how G. Inc. was involved. This cryptic memo was not sufficient to eliminate the belief that G. Inc. was an employer. For all the men knew, G. Inc. could have been "registered" in Saudi Arabia.[3] In addition, Michael's continued involvement in Saudi Arabia along with other G. Inc. employees served to cement the impression that G. Inc. was, if not the main employer, then one of the employers.
Considering Michael's extensive use of the G. Inc. offices, the testimony of E.J. Gerrits, and the failure of both Michael *545 and Maartje to explain to prospective employees that they were not acting in their capacity as officers of G. Inc., prospective employees reasonably could have believed that Michael and Maartje had authority to act on behalf of their company. By accepting employment, the employees would anticipate that part of their contract would automatically include the Florida Workers' Compensation Act. Because the employees reasonably relied on the inferred authority of two officers of G. Inc., G. Inc. should be held responsible for workers' compensation as the employer, whether or not G. Inc. paid for the employee's services. As stated in 8 Fla.Jur.2d, Business Relationship, § 311:
When, in the usual course of business of a corporation, an officer or other agent is held out by the corporation or has been permitted to act for it or manage its affairs in such a way as to justify third persons who deal with him in inferring or assuming that he is doing an act or making a contract within the scope of his authority, the corporation is bound thereby.
Having determined that the deputy was correct in finding G. Inc. liable for workers' compensation benefits, we also conclude that the deputy appropriately awarded attorney's fees. We find that the amount of the award was supported by competent substantial evidence, however, we must remand for reconsideration of the award under § 440.34(1), Fla. Stat. (1978). The 1978 version of § 440.34(1), which applies to the accident in this case, requires that the claimant pay 25% of the fee award unless it is proved that the claim was handled in a "negligent, arbitrary, or capricious manner." There is no indication in the order that the deputy considered this statute since no allocation was made nor was there a finding that the claim was badly handled.
In the issue raised on cross-appeal, A-S Co. challenges the deputy's jurisdiction to enter an order against A-S Co. and Nasir Ashemimry as "joint-venturers" with G. Inc. Although A-S Co.'s primary argument concerned constitutional questions of the sufficiency of A-S Co.'s notice, we find it unnecessary to reach these questions due to our conclusion that there was not sufficient evidence to hold A-S Co. liable as a "joint venturer" with G. Inc.[4]
G. Inc.'s relationship with A-S Co. was shown to be that of a consultant, for which it was paid a pre-determined fee. G. Inc. was also a party to a series of contracts involving three U.S. suppliers of material for the hospital project in which G. Inc. guaranteed the suppliers $175,000 profit in their dealings with A-S Co. In exchange, the suppliers agreed to turn over all excess profits to G. Inc. G. Inc. then entered into an agreement with Nasir Ashemimry's sole proprietorship (not A-S Co.) to split the profits and losses received under G. Inc.'s contracts with the suppliers while Ashemimry agreed to indemnify G. Inc. for half of the guaranteed profits.
The only evidence of any sharing of profits and losses between G. Inc. and A-S Co. (or its component parts) is the agreement concerning the three suppliers' contract. This agreement (which did not even involve A-S Co.) made G. Inc. a joint venturer with Nasir Ashemimry for the limited purpose of obtaining supplies from three particular sources; it did not make G. Inc. jointly responsible for profits and losses deriving from the remainder of the hospital project, including the employment and maintenance of personnel. The sharing of profits and losses is a necessary element of a joint venture, and the lack of evidence of any such arrangement between G. Inc. and A-S Co. precludes a finding that a joint venture existed between the two entities. Without an agreement to share joint responsibility for the actual construction of the hospital, A-S Co. cannot be held jointly and severally liable for the G. Inc.'s contractual obligation to pay workers' compensation benefits.
*546 AFFIRMED in part. REVERSED and REMANDED in part with instructions to proceed consistent with this opinion.
ERVIN and WENTWORTH, JJ., concur.
NOTES
[1] G. Inc. also questioned the deputy's jurisdiction over G. Inc., arguing that the employment contract was not principally localized in Florida as required by § 440.09(1), Fla. Stat. (1978). This is primarily a factual determination which was supported by evidence in the record concerning the location of the contract and the workers' understanding of when they were hired.
[2] All employees were paid in cash.
[3] For example, the facts showed that A-S Co. was not a "corporation registered in Saudi Arabia," but was a joint venture.
[4] We held G. Inc. to be liable for worker's compensation benefits as the primary contracting party under the inferred authority of Michael Gerrits, not as a joint adventurer with A-S Co.