456 So.2d 1254 (1984)
SYMONS CORPORATION, Appellant/Cross Appellee,
v.
TARTAN-LAVERS DELRAY BEACH, INC., D/B/a Lavers Racquet Club, Appellee/Cross Appellant.
No. 83-536.
District Court of Appeal of Florida, Fourth District.
September 26, 1984.
*1256 Robert T. Clelland, Jr., Fort Lauderdale, for appellant/cross appellee.
Jeffrey Allan Hirsch and Ronald F. Shapiro of Holland & Knight, Fort Lauderdale, for appellee/cross appellant.
SMITH, CHARLES E., Associate Judge.
The outcome of this appeal for an award of attorney's fees and appellee's cross appeal of the appellant's successful suit on a mechanic's lien hinges on the answer to one question; namely, was there proper service of the statutorily required Notice to Owner? We hold that there was. This is not to say that the corporate veil was pierced. The corporate veil may not be pierced unless it is shown not only that one business entity dominated or was the alter ego of the other, but that the relationship was created or used in order to mislead or defraud creditors. See, e.g., Dania Jai-Alai Palace, Inc. v. Sykes, 450 So.2d 1114 (Fla. 1984). In the instant case, piercing the corporate veil is beside the point, and does not determine the question whether appellant adequately noticed the owner of the construction project. Boux v. East Hillsborough Apartments, Inc., 218 So.2d 202 (Fla. 2d DCA 1969).
In its final judgment, the trial court found that by virtue of various subsidiaries, fictitious names, and interlocking management, the defendant is the owner/developer and general contractor of the Lavers Racquet Club project. The trial court also found that "[p]laintiff properly served its Notice to Owner pursuant to Florida Statute Section 713.06, upon the defendant on May 29, 1981." While the testimony and evidence contained in the record on appeal is deplorably scanty, we find the trial court was not "clearly erroneous" nor "totally without any substantial evidence" to support its findings of fact.
Symons sent a Notice to Owner by certified mail to "Lavers Delray Racquet Club" at 755 Dotterel Road, Delray Beach, Florida and also to "Tartan Dev." at 2350 Jaeger Drive, Delray Beach, Florida. The second Notice to Owner was sent to "Tartan Dev." in an attempt to satisfy the requirement set out in Section 713.06(2)(a), Florida Statutes, that "a sub-subcontractor or materialman to a subcontractor shall serve a copy of the notice on the contractor as a prerequisite to perfecting a lien under this chapter and recording a claim of lien." However, since the owner and general contractor were subsidiaries of the same parent corporation, with a common corporate officer, it is not necessary that the Notice to Owner be sent to both of them. Broward Atlantic Plumbing v. R.L.P., Inc., 402 So.2d 464 (Fla. 4th DCA 1981).
James Venable, an officer of the owner corporation, testified that all of the companies involved in the Lavers Racquet Club project do occasionally receive mail at 755 Dotterel Road. James Venable testified that the project presently called Laver's International Tennis Resort was also known as Lavers Racquet Club. He further stated that a number of names similar to Lavers Racquet Club and Laver's International Tennis Resort are reserved in Tallahassee. James Venable admitted being an officer in a number of Tartan companies registered in Florida, and that all these companies are tied together "in one way or another." He testified that Amy C. Stern was an employee of Clubhouse Restaurant, Inc., which is a subsidiary of Tartan-Laver Delray, Inc., owner-developer of the Lavers Racquet Club project. He conceded that Tartan-Laver Delray, Inc., was owner-developer of the "Lavers project."
After admitting all of the above facts, Mr. Venable stated from his own personal knowledge that Tartan-Laver Delray, Inc., did not receive a Notice to Owner from *1257 Symons which was sent to 755 Dotterel Road and signed on certified receipt by Amy C. Stern. Mr. Venable testified that Amy Stern did not have any supervisory or managerial responsibilities with Tartan-Laver Delray, Inc., nor any connection with the general contractor, Tartan Construction Company. Yet, Amy Stern apparently had the authority to receive and sign for certified mail addressed to "Lavers Delray Racquet Club" at 755 Dotterel Road, even though she was an employee of Clubhouse Restaurant, Inc., not Lavers Racquet Club.[1] Curiously, Amy Stern also happened to receive and sign for mail addressed to "Tartan Dev." at 2350 Jaeger Drive, Delray Beach, Florida, on the same day she received the certified mail for "Lavers Delray Racquet Club" at 755 Dotteral Road, a different address. Unfortunately, Symons did not have Amy Stern present at trial to inquire why she felt she had the authority to sign for certified mail addressed to two different entities, at two different addresses, by neither of which she was employed. Perhaps Amy Stern could have clarified what her job responsibilities were, and what her connection was with the Tartan companies who are all tied together "in one way or the other." However, even without Amy Stern's testimony, the trial court could have made an inference of fact that the owner, Tartan-Laver Delray, Inc., had implied actual notice of the Notice to Owner, based on Mr. Venable's testimony above and on the evidence before the trial court.
Notice is of two kinds, actual and constructive. Sapp v. Warner, 105 Fla. 245, 141 So. 124, aff'd, 143 So. 648 (1932). Actual notice is itself comprised of two types: (1) express, based on direct information; and (2) implied, which includes notice inferred from the fact that a person had the means of knowledge, which it was his duty to use. Id. Implied actual notice is an inference of fact. Id.; see also, Reinhart v. Phelps, 150 Fla. 382, 7 So.2d 783 (1942). Implied actual notice, being an inference of fact, may be drawn by the court as a matter of law when warranted by the circumstances of the particular case calling for its application in order to grant equitable relief. Sapp v. Warner, supra. United Contractors, Inc. v. United Constr. Corp., 187 So.2d 695 (Fla. 2d DCA 1966).
A review of the evidence shows that both the Notice to Owner and the Claim of Lien were addressed to "Lavers Delray Racquet Club" at 755 Dotterel Road, Delray Beach, Florida. Apparently Tartan-Laver Delray, Inc., received the Claim of Lien even though it was also addressed to "Lavers Delray Racquet Club" at 755 Dotterel Road (just as the Notice to Owner had been). The Claim of Lien was apparently received because ten days after receiving the Claim of Lien by certified mail the attorneys for "Lavers Racquet Club" bonded off the lien against the property described as "Lavers Racquet Club." A copy of the Clerk's Certificate of Bonding was sent to Symons Corporation at its address on Bryan Road, as set out in the Claim of Lien. We do not see how the attorneys for "Lavers Racquet Club" could have bonded off a lien claimed by lienor Symons Corporation unless the owner, Tartan-Laver Delray, Inc., had received the Claim of Lien sent to "Lavers Delray Racquet Club" at 755 Dotterel Road. Additionally, the Claim of Lien referred to the Notice to Owner previously mailed to the Lavers Delray Racquet Club, thus putting Tartan-Laver *1258 Delray, Inc. on notice that such document had been sent to the owner by certified mail. From the evidence above and the testimony of James Venable admitting that the various companies did receive mail at the 755 Dotterel Road address, the trial court could have made an inference of fact that the Notice to Owner was received by the Owner, Tartan-Laver Delray, Inc., at the 755 Dotterel Road address. Therefore, the trial court's finding is not "clearly erroneous" or "totally unsupported" by the record.
It is not necessary that one be an employee of a corporation to be its agent. Babson Bros. Co. v. Allison, 337 So.2d 848 (Fla. 1st DCA 1976) (citing Economic Research Analysts, Inc. v. Brennan, 232 So.2d 219 (Fla. 4th DCA 1970)). When, in the usual course of business of a corporation, an officer or other agent is held out by the corporation or has been permitted to act for it or manage its affairs in such a way as to justify third persons who deal with him in inferring or assuming that he is doing an act within the scope of his authority, the corporation is bound thereby. Edward J. Gerrits, Inc. v. McKinney, 410 So.2d 542 (Fla. 1st DCA 1982). See also, S & S Air Conditioning Co. v. Cantor, 343 So.2d 923 (Fla. 3d DCA 1977). See also cases on apparent authority: American Ladder and Scaffold Co. v. Miami Ventilated Awning Mfg. Co., 161 So.2d 699 (Fla. 3d DCA 1964) (An agent's authority need not be conferred in express terms, but may be apparent or implied under justifying circumstances); Aetna Ins. Co. v. Holmes, 59 Fla. 116, 52 So. 801 (1910); Parsley Bros. Constr. Co. v. Humphrey, 136 So.2d 257 (Fla. 2d DCA 1962); One Hour Valet, Inc. v. Keck, 157 So.2d 83 (Fla. 2d DCA 1963) (stating that whether acts are within scope of an agent's apparent authority or whether acts were ratified by the principal are questions of fact, and will not be set aside unless clearly erroneous). The trial court could have inferred from the testimony and evidence that Amy Stern had apparent authority to receive and sign for certified mail addressed to Lavers Delray Racquet Club at 755 Dotterel Road, and that, having received the signed certificates, Symons relied on this evidence of delivery that Notice to Owner had properly been served.
For serving its Notice to Owner, Symons utilized one of the methods prescribed in Section 713.18, as follows:
By mailing the same, postage prepaid, by registered or certified mail to the person to be served at his last known address and evidence of delivery.
Section 713.18(1)(c), Florida Statutes (1983).
Analogous to this method of service of Notice to Owner is Substituted Service of Process:
The statute which provides a method of substituted service on a non-resident and which requires that notice of service be sent by registered or certified mail by the plaintiff or his attorney to the defendant does not require, in the case of corporate defendant, that the notice and process be sent to some officer of the corporation; presumably, the statutory requirement that the documents be mailed "to the defendant" can be satisfied by a mailing to any place in the world where the postal service can provide a return receipt which, in the case of a corporation, can be signed by any clerical employee or agent authorized to do so. George Fischer Ltd., v. Plastiline, Inc., 379 So.2d 697 (Fla. 2d DCA 1980).
In S & S Air Conditioning Co. v. Cantor, 343 So.2d 923 (Fla. 3d DCA 1977), the plaintiff-subcontractor received a receipt for registered mail by which the notice to owner had been sent and made a substantial change of position in reliance on the effectiveness thereof. Under those circumstances the Court found that whether the attorney acting for the owners had forwarded the notice to owner after receiving and receipting the registered mail was not a matter of concern for the plaintiff-subcontractor. On the facts disclosed, the defendant-owners were estopped to deny the effectiveness of the plaintiff's preliminary notice. Id. A similar situation exists here with Symons Corporation.
*1259 As to the error in the name of the owner as listed in the Notice to Owner, the title Lavers Delray Racquet Club is so similar to the name of the owner, who was doing business as Lavers Racquet Club, that the name used in the notice should be sufficient under the doctrine of idem sonans. In cases upholding the sufficiency of the designation of an owner in the Notice of Owner under a Mechanics' Lien statute, the courts note that if the owner, or others, were not misled, prejudiced or injured by the claimed defect in the Notice, especially in the case of an honest mistake, the lien is not vitiated by such defect. Hopper-McAllister Corp. v. Pelham, 241 Mich. 235, 217 N.W. 9 (1928). See also Installment Building & Loan Co. v. Wentworth, 1 Wash. 467, 25 P. 298 (1890) (holding that a slight error in name by which the owner could not have been misled does not defeat a lien, especially where the owner itself was making the improvement). Similarly, see Lowell Hardware Co. v. May, 59 Colo. 475, 149 P. 831 (1915). Since Tartan-Laver Delray, Inc., responded to the Claim of Lien addressed to "Lavers Delray Racquet Club" by bonding off the lien, Tartan-Laver, as owner, cannot have been misled by the error in the owner's name on the claim of lien. (Additionally, the record does not indicate whether the owner, to its detriment, had already paid another for Symons' services.) Though Florida does not have any cases directly on point, in a closely analogous Florida case a claim of lien designated the lienor's name as "George J. Motz," rather than "George J. Motz Construction Corp." This court held that the error in the lienor's name was not fatally defective, in that the names were sufficiently similar to apprise the defendant against whom the claimant had asserted the lien and therefore the defendant was not adversely affected by the error. George J. Motz Construction Corp. v. Coral Pines, Inc., 232 So.2d 441 (Fla. 4th DCA 1970).
Section 713.08, Florida Statutes, in subsection (4)(a) specifically states that:
The omission of any foregoing details or errors in such claim of lien shall not, within the discretion of the trial court, prevent the enforcement of such lien as against one who has not been adversely affected by such omission or error.
Though Section 713.06, Florida Statutes, pertaining to Notice of Owner does not contain a comparable provision, reading the statutes in pari materia would allow a similar construction on the Notice to Owner. Of interest is subsection (3)(a) under Section 713.06, which states that if the description of the property in the notice of commencement prescribed by Section 713.13, mandating that owners must record a notice of commencement before beginning improvement of any real property, is incorrect and this error adversely affects any lienor, then payments made on the direct contract shall be held improperly paid to that lienor. Here we would add our concurrence with footnote 4 of the dissenting opinion, that if a lienor detrimentally relied on the information contained in the Notice of Commencement in sending his Notice to Owner, then the owner would be estopped from denying receipt of a Notice to Owner. Though the Notice of Commencement was originally required to trigger a commencement date from which to measure time limitations under the Mechanic's Lien law,[2] the information contained in the Notice of Commencement provides all the details necessary to complete a Notice to Owner. Indeed, Section 713.13(1)(a), Florida Statutes, requires with Notice of Commencement information including the name and address of the owner and contractor. Thus, the legislature contemplated that the Notice of Commencement would provide the lienor with the current names and addresses of the owner and contractor, so that the lienor could properly mail the Notice to Owner. If no Notice of Commencement was ever posted or recorded by the owner as mandated by the statute, a lienor may have difficulty in obtaining the names and addresses of the owners and contractor. Therefore, a good faith effort to mail the Notice to Owner to *1260 the correct owner at his last known address is all that is required. However, in the instant case, the record does not reveal whether a Notice of Commencement ever existed, or whether such notice did exist and was relied on by the lienor to his detriment. If a Notice of Commencement did exist, was duly posted at the site and recorded at the Clerk's office, and the lienor did not utilize the information contained therein, then we would find the lienor did not give an adequate Notice to Owner and reverse the trial court. However, again, the record does not indicate the existence of a Notice of Commencement, or whether it was utilized by the lienor.
We do not find the trial court's findings of fact that the Notice to Owner was properly served so clearly erroneous or totally without support as to warrant a reversal of its findings. Symons' proof was sufficient to show a good faith substantial compliance of the mailing of the Notice to Owner. The burden of proof then shifted to the owner to show prejudice, which it failed to do. We affirm.
The trial court struck Symons Corporation's demand for attorney's fees and failed to award attorney's fees to Symons Corporation as the prevailing party. Tartan Lavers Delray, Inc., as the owner of the property, posted a cash deposit and transferred Symons' lien from its real property to a cash deposit, pursuant to section 713.24, Florida Statutes. This statute limits the total amount of costs that can be recovered from the cash deposit, including attorney's fees, to $100.00. However, this statute does not prevent the award of an unsecured judgment for attorney's fees against the owner of the real estate. Tuttle/White Constructors, Inc. v. Hughes, 371 So.2d 559 (Fla. 4th DCA 1979) and Gesco, Inc. v. Nezelek, 414 So.2d 535 (Fla. 4th DCA 1982).
The owner relies on the case of Gesco, Inc. v. Nezelek, to support its position that it is not liable for attorney's fees. Gesco held only that the liability for costs of the surety on the bond and the principal, a lending institution, including attorney's fees, was limited to $100.00, as provided in section 713.24.
Symons Corporation, as the prevailing party against the owner, Tartan Lavers Delray, Inc., under section 713.29, is entitled to recover reasonable attorney's fees for the services of its attorney for trial and this appeal. This recovery would be limited to $100.00 maximum against the cash deposit and would be an unsecured judgment for the balance of the attorney's fees and costs.
This case is remanded to the trial court for determination of reasonable attorney's fees for trial and this appeal.
GLICKSTEIN, J., concurs.
HURLEY, J., dissents with opinion.
HURLEY, Judge, dissenting.
I respectfully disagree with the majority's approach for two reasons: (1) it ignores the rationale employed by the trial court, and (2) it substitutes a finding of agency which is not supported by the record.
Admittedly, the trial court did not use the phrase "piercing the corporate veil." It did, however, hold one corporation responsible for information received by another corporation on the theory that both were part of the same corporate family. The trial court expressly found that Tartan-Laver Delray, Inc., "by virtue of various subsidiaries and fictitious names, interlocking management, is the owner-developer and general contractor of the Laver Racquet Club... ." Based on this finding, the court held that Tartan-Laver Delray, Inc. had constructive knowledge of information given to an employee of a sister corporation. The majority, however, discounts this finding and states, "[t]his is not to say that the corporate veil was pierced." Ante, at 1256. Indeed, in the next breath, the majority opines, "In the instant case, piercing the corporate veil is beside the point... ." Ante, at 1256.
Next, the majority posits a finding of agency. It suggests that either Amy *1261 Stern, the person who received the notice to owner, or Clubhouse Restaurant, Inc., the corporation employing Ms. Stern, was the agent for Tartan-Laver Delray, Inc. The difficulty with this proposition is that it was never pled nor proved below. The majority's confusion on this point is most apparent in its expression of concern that "Symons did not have Amy Stern present at trial to inquire why she felt she had the authority to sign for certified mail addressed to two different entities... ." Ante, at 1257. The reason for her absence is obvious. From the beginning Symons took the position that service of the notice to owner on an employee of any entity within the corporate family was adequate to perfect service. Symons never attempted to prove an agency relationship and, consequently, it did not subpoena Ms. Stern.
In my view, the dispositive question on appeal is whether the statutorily required "notice to owner" was served properly.[3] I would answer in the negative and reverse.
Symons Corp. rents modular forms and related equipment to contractors for poured-in-place concrete construction. In the context of this case, Symons' status is that of a sub-sub-contractor/materialman. It signed a rental agreement with Lemi Enterprises, a subcontractor engaged in building Laver's International Tennis Resort, also known as Laver's Racquet Club, in Delray Beach. Thereafter, Symons sent a "notice to owner" by certified mail to "Laver's Delray Racquet Club, 755 Dotterel Road, Delray Beach, Fla.," and to "Tartan Dev., 2350 Jaeger Drive, Delray Beach, Fla." (The Dotterel Road address is a condominium residence building at the tennis resort.) The return receipt shows that both notices were signed and received by one Amy C. Stern. When Symons failed to receive full payment, it filed a claim of lien against the property. Pursuant to section 713.24, Florida Statutes (1983), the property owner transferred the lien claim to a cash deposit. Symons then filed a mechanics' lien foreclosure action against the owner, Tartan-Laver Delray, Inc.
Tartan-Laver responded with a motion to dismiss in which it questioned the adequacy of the allegations regarding the notice to owner. The trial court denied the motion and Tartan-Laver filed an answer containing a denial plus an affirmative defense aimed at the adequacy of the notice to owner. Symons replied with a denial of all of the allegations in the affirmative defense.
Testimony at trial confirmed that Laver's International Tennis Resort is owned by Tartan-Laver Delray, Inc. This company is a member of a large corporate family. The parent is Tartan Development Corp., a Canadian corporation not licensed to do business in Florida. The chief U.S. subsidiary is Tartan Management U.S., Inc. Tartan-Laver Delray, Inc., the owner of the tennis resort, is a subsidiary of Tartan Management U.S., Inc. The general contractor for the tennis resort is Tartan Construction Co., Inc., also a subsidiary of Tartan Management U.S., Inc. Finally, there is Clubhouse Restaurant, Inc., which apparently operates a restaurant at the tennis resort and is a subsidiary of Tartan-Laver Delray, Inc.
Trial testimony also established that the five corporations, viz., the Canadian parent, the chief U.S. subsidiary, the owner, the general contractor, and the restaurant operator, share a common corporate officer. Two of the corporations, the owner and the general contractor, maintain corporate offices at 801 S.E. Sixth Avenue in Delray Beach. James Venable, testifying on behalf of the owner and general contractor, denied that either had received a copy of Symons' notice to owner. He stated that Amy C. Stern, the person who signed the return receipts, is an employee of Clubhouse Restaurant, Inc., and that she does not have any connection with either the owner or general contractor.
Based on the foregoing evidence, the trial court pierced Clubhouse Restaurant's *1262 corporate veil and held that service on the subsidiary was sufficient to constitute service on the owner and general contractor. The court reasoned that Tartan-Laver Delray, Inc., "by virtue of various subsidiaries and fictitious names, interlocking management, is the owner-developer and general contractor of the Laver Racquet Club... ." Thus, the court entered judgment in favor of Symons and this appeal ensued.
The concept of piercing a corporate veil has been the subject of much recent discussion by this court. See, e.g., Church of Scientology of California v. Blackman, 446 So.2d 190 (Fla. 4th DCA 1984); Sisk v. General Builders Corp., 438 So.2d 65 (Fla. 4th DCA 1983); Dania Jai-Alai Palace, Inc. v. Sykes, 425 So.2d 594, 598 (Fla. 4th DCA 1982), rev'd, 450 So.2d 1114 (Fla. 1984); Vantage View, Inc. v. Bali East Development Corp., 421 So.2d 728 (Fla. 4th DCA 1982). These cases, however, are passe in light of the Supreme Court's reversal of Dania Jai-Alai, supra. There, the court reaffirmed the rule "that the corporate veil will not be pierced, either at law or in equity, unless it be shown that the corporation was organized or used to mislead creditors or to perpetuate a fraud upon them." Dania Jai-Alai Palace, Inc. v. Sykes, supra, at 1119-1120 (quoting Riley v. Fatt, 42 So.2d 769, 773 (Fla. 1950)). Thus, to pierce a corporate veil on the theory that one corporation is an "alter ego" or "mere instrumentality" of another, it is necessary to prove domination plus improper conduct.
Normally, the question of whether a corporation is an instrumentality or an alter ego of another corporation is an issue to be determined by the trier of fact. Barnes v. Liebig, 146 Fla. 219, 1 So.2d 247 (1941). However, "it is elemental that at the trial the burden of proof rests on the plaintiff to establish by competent evidence each material fact essential to recovery and that upon failure to do so it is the duty of the trial court upon appropriate motion to take the case from the jury and direct a verdict for the defendant." Smith's Bakery, Inc. v. Jernigan, 134 So.2d 519, 521 (Fla. 1st DCA 1961). In order to prevail on an "alter ego" or "mere instrumentality" theory, Symons had the burden of demonstrating that Tartan-Laver dominated Clubhouse Restaurant for an improper purpose. Symons, however, failed to shoulder this burden. Counsel for Tartan-Laver established that all of the corporations share a common corporate officer. But Symons' counsel chose not to probe beyond this fact. Obviously, the existence of a common corporate officer may serve as a legitimate starting point for an inquiry, but it does not, by itself, prove that one corporation dominated another to the extent that the subservient corporation could be termed the "mere instrumentality" of the dominant corporation. The record is silent on the policies, day-to-day operations, and interaction among the various corporations. Even more glaring is the complete absence of proof of improper purpose or conduct. Thus, Symons totally failed in its effort to pierce Clubhouse Restaurant, Inc.'s corporate veil.
Symons' fallback position is that the requirements of the mechanics' lien statute can be satisfied by showing that Tartan-Laver had constructive knowledge of the notice to owner. Symons relies upon two cases for this position: Boux v. East Hillsborough Apartments, Inc., 218 So.2d 202 (Fla. 2d DCA 1969) and Broward Atlantic Plumbing Co. v. R.L.P., Inc., 402 So.2d 464 (Fla. 4th DCA 1981). Both cases, however, are inapposite. They involve subcontractors who were deemed to be in privity with the owners and, therefore, not subject to the notice to owner requirement. See § 713.05, Fla. Stat. (1983). Furthermore, Symons' position runs afoul of the cardinal rule that the mechanics' lien statute must be construed strictly. See Sheffield-Briggs Steel Products, Inc. v. Ace Concrete Service Co., 63 So.2d 924 (Fla. 1953).
The requirements for the notice to owner are found in section 713.06(2)(a), Florida Statutes (1983), which provides in pertinent part:
All lienors under this section, except laborers, as a prerequisite to perfecting a *1263 lien under this chapter and recording a claim of lien, shall be required to serve a notice on the owner setting forth the lienor's name and address, a description sufficient for identification of the real property, and the nature of the services or materials furnished or to be furnished. A sub-subcontractor or a materialman to a subcontractor shall serve a copy of the notice on the contractor as a prerequisite to perfecting a lien under this chapter and recording a claim of lien.
"The purpose of the notice is to protect an owner from the possibility of paying over to his contractor sums which ought to go to a subcontractor who remains unpaid." Boux v. East Hillsborough Apartments, Inc., supra. Since mechanics' liens are purely creatures of statute, the law must be strictly construed and complied with in every detail. Sheffield-Briggs Steel Products, Inc. v. Ace Concrete Service Co., supra. This principle is exemplified by the host of cases which have held that untimely service of the notice to owner is a fatal defect. See, e.g., Falovitch v. Gunn & Gunn Construction Co., 348 So.2d 560 (Fla. 3d DCA 1977); Babe's Plumbing, Inc. v. Maier, 194 So.2d 666 (Fla. 2d DCA 1966); Stancil v. Gardner, 192 So.2d 340 (Fla. 2d DCA 1966). Thus, I would hold that constructive knowledge is not an acceptable substitute for full statutory compliance.[4]
Of course, a trial court's finding comes to this court clothed with a presumption of correctness. Beck v. Beck, 383 So.2d 268 (Fla. 3d DCA 1980). Yet, it is also true that to be sustained on appeal, a final judgment must be grounded in competent, substantial evidence. Walker v. Harris, 398 So.2d 955 (Fla. 4th DCA 1981). Here, the record is devoid of competent, substantial evidence to support the trial court's finding of adequate service. Since proper service of the notice to owner is an indispensable prerequisite to perfecting a mechanic's lien,[5] I would reverse and remand with instructions to enter a judgment in favor of Tartan-Laver Delray, Inc.
NOTES
[1] On certified mail receipts, there are two boxes of which one is supposed to be checked to identify the signatory as either the addressee or the Authorized Agent. In this case, neither box was checked. However, since Amy Stern was not the addressee, the presumption arises that she was an authorized agent. Though Mr. Venable testified that Amy Stern did not have any managerial or supervisory responsibilities with the owner, Tartan Laver Delray, Inc., Mr. Venable did admit that Amy Stern was an employee of a subsidiary owned by Tartan-Laver Delray, Inc. and that the Tartan companies did receive mail at 755 Dotterel Road. Mr. Venable never testified that Amy Stern was not an agent of the owner or was not authorized to receive mail for the Tartan companies at the Dotterel Road address. Mr. Venable testified only that Amy Stern was not an employee or agent, or otherwise affiliated with Tartan Construction Company.
[2] See 1963 Amendment to 1935 Mechanic's Lien law.
[3] See § 713.06(2)(a), Fla. Stat. (1983).
[4] It is significant that Symons never pled nor attempted to prove that it had been misled by information contained in the owner's notice of commencement. Section 713.13, Florida Statutes (1983), requires the owner to list his name, address, etc. on a notice of commencement. One copy of the notice must be recorded with the clerk of the circuit court while a second must be posted at the job site. Obviously, a key function of the notice of commencement is to provide a materialman with information to complete the required lien law notices. 1 S. Rakusin, Florida Mechanics' Lien Manual, ch. 10 at 8 (1974). Although case law has held that an owner's non-compliance with the statute does not excuse a materialman's non-compliance, see Babe's Plumbing, Inc. v. Maier, supra, I have no hesitancy in suggesting that a material misrepresentation in the notice of commencement, which is reasonably relied upon by a materialman acting in good faith, could serve as a basis for estoppel. Estoppel, however, "is an affirmative defense which must be pleaded and proved before relief can be granted." Goodman v. Habif, 424 So.2d 171, 172 (Fla. 3d DCA 1983). And as indicated, Symons did not attempt to travel upon this route.
[5] Under the present statutory scheme, the only time at which a lienor can be paid, without first timely serving a notice to owner, is when the materialman is listed in the contractor's final affidavit and the materialman's time for service notice has not expired. See § 713.06(3)(d)(2), Fla. Stat. (1983); 1 S. Rakusin, Florida Mechanics' Lien Manual, ch. 8, at 9 (1974).