477 So.2d 1060 (1985)
William H. FOLWELL, As Bishop of the Diocese of Central Florida, and the Diocese of Central Florida, Inc., Appellants,
v.
James M. BERNARD, Jr., by and through His Parents, Natural Guardians and Next Friends, Roberta Bernard and James Bernard, and Roberta Bernard and James Bernard, Individually, Appellees.
No. 84-1140.
District Court of Appeal of Florida, Second District.
October 25, 1985.
*1061 Chris W. Altenbernd of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., and James A. Murman of Barr, Murman and Tonelli, P.A., Tampa, for appellants.
Larry Klein of Klein & Beranek, P.A., and Fred Hazouri of Cone, Wagnor, Nugent, Johnson, Hazouri & Roth, P.A., West Palm Beach, for appellees.
FRANK, Judge.
The instant appeal has its origin in a personal injury action which resulted in a $566,000.00 judgment rendered against the appellants, "William H. Folwell as Bishop of the Diocese of Central Florida, Inc." and "The Diocese of Central Florida, Inc." The subsidiary facts associated with the injury received by James M. Bernard, Jr., a minor, although not essential to our determination, are briefly stated as follows:
In 1976, James M. Bernard, Sr., was elected a vestryman of St. Ann's Episcopal Church located in Wauchula, Florida. St. Ann's is an incorporated body. The members of the vestry voluntarily performed the maintenance responsibilities associated with the church, including cutting the grass. Bernard, Sr. had been scheduled by the vicar, Reverend Smith, to cut the grass during August of 1976. On August 28, 1976, when Bernard, Sr. had completed cutting the churchyard's grass, he began to turn off the lawn mower. He disengaged the clutch but left the throttle wide open. As he bent over to choke the engine to a stop, the self-propelled mower jumped into gear and lurched forward. In attempting to stop the mower's forward motion, Bernard, Sr. caused the front end of the machine to tip upward. His son, Bernard, Jr. was struck by the rotary blade at or near his left knee inflicting severe injuries requiring extensive medical treatment.
*1062 Following a tortuous procedural course involving the amendment of the original complaint to add parties and to alter the causes of action, and the ultimate elimination of all other defendants as a result of settlements, this action was tried before a jury upon Count IX of the third amended complaint only against "William H. Folwell, as Bishop of the Central Florida Diocese of the Episcopal Church." That count implicated Bishop Folwell on the theory that he was ultimately responsible for the maintenance and operation of St. Ann's lawn mower which injured Bernard, Jr. Upon the close of the evidence, the case was tendered to the jury upon a special verdict form containing the following questions, each of which was answered in the affirmative:
1. Was James Bernard, Sr., an agent or subagent of the Central Florida Diocese of the Episcopal Church acting within the scope of his agency or subagency?
2. Was St. Ann's Episcopal Church of Wauchula an agent of the Central Diocese of the Episcopal Church acting within the scope of its agency?
3. Was there negligence on the part of James Bernard, Sr. which was a legal cause of damages to the Plaintiffs?
4. Was there negligence on the part of St. Ann's Episcopal Church of Wauchula which was a legal cause of damages to the Plaintiffs?
The jury awarded the appellees $676,000.00 but that amount was subsequently reduced to $566,000.00 by excluding the total amount of the settlements entered into with former defendants. A final judgment was entered upon the verdict against "the Central Florida Diocese of the Episcopal Church." The judgment was subsequently amended, an event which created an issue on appeal we need not resolve in light of the conclusion we reach.
We have exhaustively canvassed and assessed the entire record and, with no less care, we have considered and passed upon the four issues presented by the appellants. The single question most critical among the four urged upon us, requiring our analysis and comment, is whether the trial court erred in denying the appellants' motion for directed verdict which thus permitted the jury affirmatively to answer the interrogatories numbered 1 and 2.
The existence of an agency relationship is a question of fact for the jury, Orlando Executive Park, Inc. v. Robbins, 433 So.2d 491 (Fla. 1983); Cleveland Compania, Etc. v. Logothetis, 378 So.2d 1336 (Fla. 2d DCA 1980); McCabe v. Howard, 281 So.2d 362 (Fla. 2d DCA 1973), "unless the evidence is susceptible of only one interpretation." Jaar v. University of Miami, 474 So.2d 239, 242 (Fla. 3d DCA 1985). Although the appellate court may disagree with the result reached by the jury, it is not empowered to substitute its view of the evidence for that of the jury. Williams v. Dolphin Reef, LTD, 455 So.2d 640 (Fla. 2d DCA 1984). We adhere to the foregoing principles.
The appellees rest a substantial portion of their position in support of the judgment upon International Union of Operating Engineers, Local 675 v. Lassitter, 295 So.2d 634 (Fla. 4th DCA 1974), rev'd., 314 So.2d 761 (Fla. 1975). We harbor grave doubt as to the correctness of Lassitter in the light of Shimman v. Frank, 625 F.2d 80, 98 n. 37 (6th Cir.1980). In any event, we perceive the Constitution and Canons of the Diocese to be in the nature of a contract between it and its missions and parishes. In that circumstance, consistent with the well-settled principle that it is a function of the court to construe and interpret contracts, it was error to grant to the jury the power to interpret the Constitution and Canons in the search for an agency relationship, velnon, between the Diocese and St. Ann's. Sosa v. Knight-Ridder Newspapers, Inc., 435 So.2d 821 (Fla. 1983); City of Orlando v. H.L. Coble Construction Co., 282 So.2d 25 (Fla. 4th DCA 1973).
Having determined that the trial court erred in not construing and interpreting the Constitution and Canons as a matter *1063 of law, that task now falls to us within the scope of our review. Without restating the subsidiary factual elements found significant by the Fourth District in Lassitter, the determinative consideration distilled by our sister court from the International's constitution was the degree of retained authority or power over the day-to-day affairs of Local 675 which equated with "complete domination." Thus, heeding the appellees' urging that the reasoning followed in Lassitter is applicable to the instant matter, we conclude that where vicarious liability is sought to be imposed upon one of two ostensibly interrelated entities through the ordinary principles of agency, the imposition of such liability is unwarranted in the absence of evidence revealing that one entity, the purported principal, dominates and controls the other. Sapp v. City of Tallahassee, 348 So.2d 363 (Fla. 1st DCA 1977); Cf. Church of Scientology of Cal. v. Blackman, 446 So.2d 190 (Fla. 4th DCA 1984); Ortega v. General Motors Corp., 392 So.2d 40 (Fla. 4th DCA 1980). Our analysis of the Diocese's Constitution and Canons fails to disclose that quantum of diocesan control, let alone domination, over the everyday secular affairs of St. Ann's to sustain the imputation of liability to the Diocese. Indeed, we do not gainsay that the Diocese has impressed upon and demands from St. Ann's unfailing obedience to ecclesiastical dogma, discipline and authority. We subscribe, however, to the concept that whenever a religious society incorporates, it assumes a dual existence; two distinct entities come into being  one, the church, which is conceived and endures wholly free from the civil law, and the other, the corporation created through the state prescribed method. Trinity Presbyterian Church of Montgomery v. Tankersley, 374 So.2d 861 (Ala. 1979). Each remains separate although closely allied. Id. The components of the ecclesiastical interrelationship between the parent church and the subordinate body cannot be permitted to serve as a bridge capable of reaching the non-secular parent in a civil proceeding.
Finally, apart from the Constitution and Cannons, we acknowledge the presence of evidence indicating the Diocese accorded St. Ann's a modicum of financial assistance and the reservation to the Diocese of a measure of control over some fiscal aspects of St. Ann's existence. We find no evidence from which a jury could conclude that the Diocese controlled or regulated the church or Bernard Sr. in the maintenance of its grounds or the manner in which the equipment used to maintain the grounds was either operated or kept in repair.
Accordingly, we reverse and direct the trial court to vacate the judgment.
DANAHY, A.C.J., and CAMPBELL, J., concur.