519 So.2d 1009 (1987)
INTERNATIONAL ASSOCIATION OF BRIDGE, STRUCTURAL & ORNAMENTAL IRONWORKERS, AFL-CIO, Appellant,
v.
BLOUNT INTERNATIONAL, LTD., Appellee.
No. 87-448.
District Court of Appeal of Florida, Second District.
November 13, 1987.
Rehearing Denied February 8, 1988.
*1010 Victor J. Van Bourg and David A. Rosenfeld of Van Bourg, Weinberg, Roger & Rosenfeld, San Francisco, Cal., Mark F. Kelly and Robert F. McKee of Kelly & McKee, P.A., Tampa, for appellant.
Gary R. Kessler and David L. Gordon of Jackson, Lewis, Schnitzler & Krupman, Atlanta, Georgia; A.H. Lane of Lane, Trohn, Clarke, Bertrand & Williams, P.A., Lakeland, for appellee.
CAMPBELL, Acting Chief Judge.
Appellant, defendant below, International Association of Bridge, Structural & Ornamental Ironworkers, AFL-CIO, takes this interlocutory appeal from the trial court's order finding appellant liable to appellee, plaintiff below, Blount International, Ltd., for the tortious acts of its Local 397 union.
Appellee's action below was brought against appellant, its Local 397 union and various individual defendants who were members and/or officers of Local 397. Appellee's cause of action was premised on allegations of tortious interference with appellee's performance of its contract with the City of Lakeland and on allegations of the violation of various Florida Statutes relating to trespass by the defendants below. In the action in the trial court, the issues of liability and damages were bifurcated. All of the defendants below, except for appellant, entered into a consent judgment on the issue of liability.
Appellant and appellee stipulated that the issue of appellant's liability for the tortious acts of its Local 397 was controlled by the existence, or lack of it, of an agency relationship between appellant and its Local 397. The parties further stipulated that the question of the agency relationship *1011 should be resolved by the trial court below, acting without a jury, on the basis of the parties' submissions in support of and in opposition to appellant's motion for summary judgment. The trial court concluded, on the basis of extensive findings of fact and conclusions of law, that under Florida law an agency relationship had been shown to exist between appellant and its Local 397 so that appellant was liable for the tortious acts committed in Florida by its Local 397. We find that there is sufficient evidence in the record to support the findings and conclusions of the trial judge and affirm.
In the consent judgment entered in regard to Local 397, and the other individual defendants, those defendants admitted:
The conduct of the Individual Defendants and of the agents, representatives and members of Local 397 on October 26, 1979, was threatening, intimidating, coercing and harassing of Plaintiff, its employees, agents and their families, and that said conduct violated the laws and dignity of the State of Florida. Furthermore, the Defendants party to this Consent Judgment admit that they interfered with the business relationship which Plaintiff had established with the City of Lakeland, Florida, and certain of Plaintiff's subcontractors, and that they engaged in the violent, threatening, and intimidating conduct which occurred during the latter part of October, 1979, at Plaintiff's power plant construction site on Lake Parker Drive in Lakeland, Florida.
Appellant relies primarily on the cases of Carbon Fuel Co. v. United Mine Workers, 444 U.S. 212, 100 S.Ct. 410, 62 L.Ed.2d 394 (1979); United Mine Workers v. Coronado Coal Co., 259 U.S. 344, 42 S.Ct. 570, 66 L.Ed. 975 (1922); Shimman v. Frank, 625 F.2d 80 (6th Cir.1980); and tangentially, Folwell v. Bernard, 477 So.2d 1060 (Fla. 2d DCA 1985). Carbon Fuel considered an action brought under the federal Labor Management Relations Act, Taft-Hartley Act, 29 U.S.C. § 185 (1947). Coronado Coal was a decision considering whether there was a cause of action under the federal Sherman Anti-trust Act. Shimman was an action brought under the Landrum-Griffin Act, 29 U.S.C. § 411, and also involved a claim under 42 U.S.C. § 1985(3) and § 1986, and a "pendant claim under Ohio state law." In Folwell, we were confronted with the interpretation of an ecclesiastical relationship between a parent church and a local subordinate body. We determined in Folwell that the constitution and canons pertaining to the parent church and local body were more in the nature of a contract and should be interpreted as a matter of law. We interpreted those documents as failing to disclose domination by the parent church over the local body in the everyday secular affairs as opposed to its ecclesiastical control of the local body. We, therefore, determined in that ecclesiastical situation that dominance over ecclesiastical dogma could not serve as a bridge capable of affording a method to hold the parent civilly liable for the tort of the subordinate committed solely in regard to its day to day secular affairs.
In Folwell, while still applying the reasoning of International Union of Operating Engineers, Local 675 v. Lassitter, 295 So.2d 634 (Fla. 4th DCA 1974), quashed on other grounds, 314 So.2d 761 (Fla. 1975), rev'd. and remanded on other grounds, 325 So.2d 408 (Fla. 4th DCA 1975), quashed and judgment entered by trial court reinstated, 349 So.2d 622 (Fla. 1976), we speculated as to the continued correctness of Lassitter in the light of Shimman. We conclude that Lassitter is still the controlling law in Florida on the question of agency relationships of parent or international unions and their subordinate local unions, particularly where there has not been a preemption by federal law.
The United States Supreme Court has specifically held in Farmer v. Carpenters, 430 U.S. 290, 97 S.Ct. 1056, 51 L.Ed.2d 338 (1977), that there is an exception to the general rule of the doctrine of federal preemption of state court jurisdiction in the labor law area in cases involving violent tortious activity. The supreme court there held:
Similar reasoning underlies the exception to the pre-emption rule in cases involving *1012 violent tortious activity. Nothing in the federal labor statutes protects or immunizes from state action violence or the threat of violence in a labor dispute, Automobile Workers v. Russell, 356 U.S. 634, at 640, 2 L.Ed.2d 1030, 78 S.Ct. 932 [at 936]; id., at 649, 2 L.Ed.2d 1030, 78 S.Ct. 932 [at 941] (Warren, C.J., dissenting); United Construction Workers v. Laburnum Constr. Corp., 347 U.S. 656, 666, 98 L.Ed. 1025, 74 S.Ct. 833 [839] (1954), and thus there is no risk that state damage actions will fetter the exercise of rights protected by the NLRA. On the other hand, our cases consistently have recognized the historic state interest in "such traditionally local matters as public safety and order and the use of streets and highways." Allen-Bradley Local v. Wisconsin Empl. Rel. Bd., 315 U.S. 740, 749, 86 L.Ed. 1154, 62 S.Ct. 820 [825] (1942). And, as with the defamation actions preserved by Linn, state court actions to redress injuries caused by violence or threats of violence are consistent with effective administration of the federal scheme; such actions can be adjudicated without regard to the merits of the underlying labor controversy. Automobile Workers v. Russell, supra, [356 U.S.] at 649, 2 L.Ed.2d 1030, 78 S.Ct. 932 [at 941] (Warren, C.J., dissenting).
....
The State, on the other hand, has a substantial interest in protecting its citizens from the kind of abuse of which Hill complained. That interest is no less worthy of recognition because it concerns protection from emotional distress caused by outrageous conduct, rather than protection from physical injury, as in Russell, or damage to reputation, as in Linn. Although recognition of the tort of intentional infliction of emotional distress is a comparatively recent development in state law, see W. Prosser, Law of Torts § 12, pp. 49-50, 56 (4th ed. 1971), our decisions permitting the exercise of state jurisdiction in tort actions based on violence or defamation have not rested on the history of the tort at issue, but rather on the nature of the State's interest in protecting the health and wellbeing of its citizens.
430 U.S. at 299-304, 97 S.Ct. at 1063-1065, 51 L.Ed.2d at 349-352.
Considered in the light of that holding by the supreme court and in consideration of the provision of the consent judgment set forth above, the trial court was eminently correct in its conclusion below that:
It should be emphasized that the Court's judgment in this matter is based on narrow grounds. The events of 1979 and 1980 were punctuated by violence and intimidation. The presence of these elements has traditionally invoked the state's jurisdiction because of the state's deeply rooted interest in eliminating such conduct. Thus, the Court follows the agency standards generally applicable in Florida and rejects the assertion by Defendant that because it is a labor union, the proof of agency must meet a higher, more stringent standard than under Florida common law.
In adhering to the interpretation by the Florida courts of the applicable law in this state, we are mindful of the rule that state courts, in construing and interpreting state law, are not bound by the decisions of federal courts. State courts are bound only to apply the provisions of the Constitution of the United States and the lawful Acts of Congress and are not bound by any federal court regarding the interpretation of state law and only by the United State Supreme Court in regard to interpretations of the United States Constitution and Acts of Congress. Art. VI, cl. 2, U.S. Const.; State v. Dwyer, 332 So.2d 333 (Fla. 1976); Bradshaw v. State, 286 So.2d 4 (Fla. 1973); State v. Moyle, 299 Or. 691, 705 P.2d 740, 750 (1985); People v. Estrada, 234 Cal. App.2d 136, 44 Cal. Rptr. 165 (Cal. 1st DCA 1965).
The sole question stipulated below for the trial judge to resolve as determinative of the issue of appellant's liability for the tortious acts of its Local 397 union was the question of the agency relationship between appellant and Local 397. In Florida, the question of agency is one of fact to be *1013 determined by the trier of fact. Cleveland Compania v. Logothetis, 378 So.2d 1336 (Fla. 2d DCA 1980); Church of Scientology of California v. Blackman, 446 So.2d 190 (Fla. 4th DCA 1984). Where there is evidence to support the trier of fact on a finding of fact, that finding will not be disturbed on appeal.
The Lassitter court held that a union's constitution may be examined to determine whether it can produce evidence upon which the trier of fact can determine that an International Union is given such pervasive constitutional control of the local union that an agency relationship may be found to exist. Lassitter, 295 So.2d at 638.
The trial court made the following findings and conclusions:
Based on the evidence before it, the Court concludes that the International is liable for the acts of the Local. It is clear that the International Union, through the Constitution, By-Laws, etc. exercises a strict control over the Local, and the Local is clearly subordinate to the International. This is an actual control, not theoretical. It is clear that, although the Defendant International did not, by the evidence before the Court, direct or in a formal way authorize the activity of the Local, it ratified or acquiesced in that activity.
On the issue of what law controls, this Court will follow established Florida law as set forth in Lassitter rather than the line of cases represented by Shimman v. Frank, 625 F.2d 80 (6th Cir.1980). The application of Florida law is particularly appropriate because of the presence of violent conduct by Local 397.
....
The Court finds that Defendant International is the parent organization of Defendant Local 397, which maintains considerable control over the affairs of Defendant Local 397, through the express terms of its Constitution and Defendant Local 397's By-Laws.
A review of several significant sections of the International's Constitution demonstrates the International's pervasive control over Defendant Local 397. For example, Local 397's By-Laws had to be approved by Defendant International before they became effective (Const., Art. XXI, § 4). The International's general president has "full authority" to suspend any local officer (Const., Art. IX, § 13), and to suspend or revoke local charters (Const., Art. IX, §§ 10, 11; see also Const., Art. XXI, § 17). Similarly, the General Executive Council of Defendant International has the exclusive authority to revoke local charters for a variety of reasons, including failure to observe organizing plans or policies promulgated by the International (Const., Art. III, § 5) and failure to get new collective bargaining agreements approved by Defendant International before their execution (Const., Art. XXI, § 29, para. A).
Defendant International exercises considerable control over Defendant Local 397's local business decisions. Defendant International has the power to prohibit Local 397 from taking any action with an employer  including the mere proposal of contract terms  without the International's prior approval (Const., Art. XXI, § 29). The Constitution also provides that no local union shall make a settlement relating to any loss incurred without the International's written approval (Const., Art. XXI, § 21) and that no local union can call a strike or work stoppage without the sanction and approval of the International (Const., Art. XXI, § 28).
Even minute, day-to-day business procedures are closely governed and controlled by the International. Under the Constitution, Defendant International has the authority to dictate the system of accounting and bookkeeping used by the locals (Const., Art. XI, § 10), and to provide rules and regulations governing all locals (Const., Art. XII, § 11).
The Constitution also allows the International to control the political processes of the Local. It sets forth the officers who may be elected to serve the local members (Const., Art. XXVI, § 1) and their specific responsibilities and authority (Const., Art. XXVI, §§ 2 through 7, 9, 10 and 12). No member can qualify to *1014 campaign for a union office without the express approval of the International (Const., Art. XXI, § 2). The International even has censorship powers over certain written communications issued by the local (Const., Art. XXI, § 26).
The International's Constitution further provides that charges can be preferred against any local union or member for, among other things, violating any provision of the Constitution, advocating any member or local to withdraw from the International or "doing any act or thing which is intended or likely to injure the Association, or to bring discredit upon it...." (Const., Art. XIX, § 10).
In addition, this court notes that the constitution of appellant, article XXVI, specifically sets forth the "Constitution Governing All Local Unions" leaving only the local by-laws which can be developed by local unions but must be approved by appellant. Further, we note that appellant's constitution, article XXI, section 2, provides that all persons seeking to become members of the local union (the individual defendants below) must have a copy of their application for membership in the local union sent to appellant's international headquarters for approval. That section further provides that if a candidate for membership is rejected by the local union, the application of the rejected candidate with the reasons for rejection must be sent to appellant's headquarters.
We, therefore, find sufficient evidence to support the finding by the trial court of dominanice by appellant over Local 397. That dominance justifies the finding of agency and the resulting liability of appellant for the tortious acts of Local 397.
Affirmed.
SCHOONOVER, J., and PACK, R. WALLACE, Associate Judge, concur.