SCHOONOVER, Judge.
The appellants, Laborers’ International Union of North America (International), and Laborers’ International Union of North America, Local No. 1240 (Local 1240), challenge a final judgment rendered against them and two individuals. We find that the trial court erred by not directing a verdict in favor of International and, accordingly, reverse the judgment entered against it. We find no error in the judgment entered against Local 1240 and, accordingly, affirm that judgment. The other two defendants in the trial court, Martin Walsh and Edward DiBene, have not appealed, and accordingly, the judgments entered against them are also affirmed.
Local 1240 is a labor union which has offices in Lakeland, Florida. International is the parent union, and all members of Local 1240 are automatically members of International. Local 1240’s jurisdiction extends to Marco Island which is in Collier County. Prior to the incident which gave rise to this action, Local 1240’s assistant business manager (more properly referred to as a field representative), Gerald Walsh, was attempting to negotiate a union contract with a large open shop contractor, Boran Craig Schreck, of Naples, Florida. During the month of March 1978, in furtherance of Gerald Walsh’s efforts to obtain the contract, a picket line was established at the Caxambas Towers project being constructed by Boran Craig Schreck on. Marco Island. About ten days prior to the incident in question, Gerald Walsh met with the owner of Allied Cranes Services, whose operators were members of the Operating Engineers’ Union. Martin Walsh, a member of the union and a defendant in the trial court, was present at that meeting and stated that he would assure the integrity of the picket line and would burn or blowup anybody that came across the line. Gerald Walsh also went to the offices of the Operating Engineers’ Union in Fort Lauderdale, Florida, and negotiated an agreement with that union whereby Local 1240 would respect an Operating Engineers’ picket line at a different site if the *1221 Caxambas Towers picket line would not be crossed by the engineers. Martin Walsh and Edward DiBene, also a defendant and a member of the union, accompanied Gerald Walsh to Fort Lauderdale but did not participate in the negotiations concerning the agreement.
In accordance with the above agreements, Allied Crane Services removed their equipment from the project, and a short time later, appellee, Rayburn Crane Service, Inc., who had previously worked at the project for Boran Craig Schreck, agreed to return. At the conclusion of Rayburn’s first day back on the job, May 8, 1978, the cranes were removed from the project and taken fifteen or twenty miles to the home of the appellees, Charles W. Rayburn and Robbie L. Rayburn. That night the cranes were burned by Martin Walsh and Edward DiBene. The next morning they told the assistant business manager, Gerald Walsh, that they had burned the cranes. Gerald Walsh did not remove Martin Walsh from the picket line, but did report the information to local law enforcement officials. Martin Walsh was subsequently seen at the picket line giving instructions to the members of the picket line just as he had done prior to the arson. Gerald Walsh, after giving sworn testimony concerning the incident, left his family in Naples, Florida, and disappeared.
On May 7, 1982, two tort actions seeking compensatory and punitive damages were filed against International, Local 1240, Martin Walsh, and Martin DiBene. One of the actions was filed by appellee, Rayburn Crane Service, Inc., and the other by appel-lees, Charles W. Rayburn and Robbie L. Rayburn (all three appellees will be hereinafter referred to as the Rayburns). These actions were subsequently consolidated. Since Martin Walsh and Ed DiBene have not appealed, we will not discuss the complaints as they relate to them. Both complaints alleged that International and Local 1240 were liable for intentional and malicious destruction of property and for negligence. Mr. and Mrs. Rayburn’s complaint also contained a count for intentional infliction of mental distress on Mrs. Rayburn. Another count for negligent infliction of mental distress of Mrs. Rayburn was subsequently abandoned. The Rayburns alleged generally that Local 1240 was responsible for the damages sustained as a result of the arson because Martin Walsh and Edward DiBene were employees of Local 1240 acting on its instruction and that the local was negligent in its relationship with Martin Walsh because he had a history of violence. The Rayburns contended that International was responsible because they completely dominated and controlled Local 1240.
The matter proceeded to a jury trial on September 6, 1988. During the course of the trial, the Rayburns abandoned the negligence counts of their complaints and proceeded on the theory that the appellants were liable for the acts of Martin Walsh. The appellants’ motions for directed verdicts made at the close of the plaintiffs’ case and renewed at the close of all of the evidence were denied. The trial court did, however, rule that the plaintiffs had not established an entitlement to receive punitive damages from International and removed that question from the jury’s consideration.
The jury was asked to decide if the local union intentionally and maliciously destroyed property of Rayburn Crane Service, Inc. and Charles and Robbie Rayburn. It was instructed that a labor union is liable for the intentional and malicious destruction of property by members of the union if its members committed that act during the course of a labor activity, and if, (1) the act was authorized by the union through its officers or employees; (2) the act was participated in by the union through its officers, employees, or members; or (3) the union through its officers or employees or members ratifies the act.
In explaining this instruction, the jury was instructed that an act of a union member may be deemed authorized by an employee if the employee with authority or control over the member knows of the member’s intention to act and fails to do anything to prevent the member from acting. An act of a union member can be ratified by the union if the act is purported *1222 ly done on the union’s behalf, if the union learned of the act soon after its commission, and the union failed to take any action that evidenced an intention to disassociate itself from the act.
At the conclusion of the trial, the jury returned a verdict finding everyone liable. The jury imposed compensatory and punitive damages against Martin Walsh, Edward DiBene, and Local 1240 and compensatory damages against International. This timely appeal followed.
I.
Local 1240 contends that the evidence presented to the jury was insufficient to support a finding that they were responsible for the actions of Martin Walsh and that the trial court therefore erred in denying its motion for directed verdict. We disagree. A Labor union or its membership may be held responsible, under general principles of agency law, for the common law torts of its officers or members committed during the course of a lawful strike, or other primary labor activities, if the union officers or members authorized, participated in, or ratified the tor-tious acts. International Union of Operating Engineers v. Long, 362 So.2d 987 (Fla. 3d DCA 1978). See also 36 A.L.R.3d 405 (1971); International Union of Operating Engineers, Local 675 v. Lassiter, 295 So.2d 634 (Fla. 4th DCA 1974), quashed on other grounds, 314 So.2d 761 (Fla.), reversed and remanded on other grounds, 325 So.2d 408 (Fla. 4th DCA 1975), quashed and judgment entered by trial court reinstated, 349 So.2d 622 (Fla.1976). See also Winn-Dixie Stores, Inc. v. Robinson, 472 So.2d 722 (Fla.1985). Unless the evidence is susceptible of only one interpretation, the existence of an agency relationship is a question of fact for the jury, and we may not substitute our view of the evidence for that of the jury. Folwell v. Bernard, 477 So.2d 1060 (Fla. 2d DCA 1985), rev. denied, 486 So.2d 595 (Fla.1986). In this case, the evidence was susceptible of more than one interpretation and the question was therefore properly submitted to the jury under the instructions set forth above.
Gerald Walsh, an agent of Local 1240, established and maintained a legal picket line on Marco Island. Martin Walsh, a union steward on another project on Marco Island was not an employee of the union, but was a member of both the local and international union. During the critical period- of time, Martin Walsh was allowed to participate at the picket line and give directions to the men doing the picketing. He also accompanied Gerald Walsh to two meetings between Gerald Walsh and another union. During one of those meetings, in the presence of Gerald Walsh, he informed representatives of another union that he would insure the integrity of the picket line and would burn or blowup anyone crossing the picket line. The record lacks any evidence that Gerald Walsh, after being made aware of Martin Walsh’s threats, took any action to stop him from exercising some degree of control over the picket line or from carrying out his threats. This was sufficient to support a jury finding that when Martin Walsh destroyed the Ray-burns’ property after they crossed the picket line, he was doing so incidentally to the union’s picketing endeavors and with the authority of the union through its agent Gerald Walsh. Furthermore, the actions of Gerald Walsh, because they were done as an agent of the union, provided the necessary “link” to impose direct liability on Local 1240 as well as under the doctrine of respondeat superior. See Winn-Dixie; Long; Lassiter; 36 A.L.R.3d 405 (1971). These same actions on the part of Gerald Walsh, when considered in a light most favorable to the Rayburns, also support the jury’s imposition of punitive damages against Local 1240. See Winn-Dixie; Long; Lassiter. See also Mercury Motors Express, Inc. v. Smith, 393 So.2d 545 (Fla.1981).
Local 1240 also contends that there was not sufficient evidence to support a finding that Local 1240 ratified the acts of Martin Walsh. The general rule is that a criminal act committed outside the scope of authority cannot be ratified, Mallory v. O’Neil, 69 So.2d 313 (Fla.1954), and Local *1223 1240 contends that the evidence in this case is not sufficient to show ratification, if in fact any exceptions to the rule exist. See Mallory. The jury was instructed to determine if Local 1240 either authorized, participated in, or ratified Martin Walsh’s conduct. Since sufficient evidence was submitted to the jury on the authority question, and a general verdict form on the question of liability was submitted to the jury without objection, we need not decide. if there was sufficient evidence presented to the jury on the ratification question. Colonial Stores, Inc. v. Scarbrough, 355 So.2d 1181 (Fla.1977).
We find no merit in any of the other issues raised by Local 1240 and, accordingly, affirm the judgment entered against it.
II.
International contends that the trial court erred by denying its motion for directed verdict made at the close of the Rayburns’ case-in-chief and renewed at the close of all of the evidence. We agree that, construing the evidence in a light most favorable to the Rayburns, there was insufficient evidence to support a finding that International dominated and controlled Local 1240 and, therefore, under the instructions given to the jury, that International was liable under the law of agency for the Rayburns’ damages.
The jury was instructed that International would be liable if it found Local 1240 liable and it found that International dominated and controlled Local 1240. It was instructed further that it could look to International’s constitution as well as other evidence showing the relationship between Local 1240 and International in determining if International had complete domination over Local 1240.
The evidence presented to the jury, without considering the constitutions of the unions, clearly does not support a finding of domination and control in connection with the picket line established by Local 1240 or its daily operations. The record reflects that International was never asked for authority to establish the picket line, was not informed that it was established, and only found out about the arson many months after it occurred. Local 1240 elected its own officers, expended its own funds, and owned its own property.
The constitutions of the unions, furthermore, do not provide sufficient evidence to support a finding of the necessary domination or control. It is true that the union constitutions that were found sufficient to support a finding of domination and control by our sister court in Lassiter and this court in International Ass’n of Bridge, Structural & Ornamental Ironworkers, AFL-CIO v. Blount Int’n, Ltd., 519 So.2d 1009 (Fla. 2d DCA 1987), have many similar provisions. The Labor Management Reporting and Disclosure Act, 29 U.S.C., section 401 et seq. appears to require those similarities. However, the constitutions in Lassiter and Blount have material differences which distinguish them from the constitutions in this case. In Lassiter, the constitution, among other things, provided that the international union had the power to prohibit locals from taking any action with an employer unless it was authorized by the international union. In Blount, the constitution not only gave the parent union considerable control over the local’s day to day activities, but also no local union could conduct a strike or work stoppage without the approval of the parent union. To the contrary, in this case Local 1240’s constitution provided that each local union shall be autonomous in the exercise of its right to negotiate and consummate agreements with employers and to police and enforce the terms and conditions thereof. It was under no obligation to seek approval for the picket line in question, did not seek that approval, and conducted the picketing without any domination or control of International. This evidence was insufficient to submit the question of dominance or control to the jury, and the trial court, accordingly, erred in denying International’s motion for a directed verdict. We, therefore, remand for the entry of a judgment for International.
Affirmed in part, reversed in part, and remanded with instructions.
*1224 CAMPBELL, C.J., concurs.
ALTENBERND, J., concurring and dissenting in part.